### HOME INDEMNITY CO. v. DUNGAN, Trustee, et al.

No. 26054. Oct. 20, 1936.

Pierce, Follens & Rucker, for plaintiff in error.

Harry O. Glasser, Rayford S. Reid, Leo J. Williams, and M. J. Parmenter, for defendants in error.

PHELPS, J. The material facts upon which the plaintiff obtained a judgment in the common pleas court are these:

On November 25, 1931, the State Industrial Commission found that J. J. Dungan sustained an accidental injury to his eyes while employed by Haynes Brothers Drilling Company; that he lost no time from work as a result of the injury, but that his eyes should be given treatment. No award for temporary disability was contained in this order. The extent of the order was that the employer or insurance carrier was directed "* * * to render the claimant such medical treatment as is needed at this time, and to pay compensation during the period of treatment at the rate of $18 per week."

The insurance carrier instituted an original action in this court to review that order, contending that the injury did not arise out of and in the course of the employment. The Home Indemnity Company, defendant in the trial court in this case, was surety on the bond of the insurance carrier when that insurance carrier instituted the above action for review of the order. This court affirmed the order. Haynes Bros. Drilling Co. v. Dungan, 158 Okla. 263, 13 P. (2d) 197. The effect of said affirmance was that the employee was to be furnished medical treatment and paid compensation during the period of the treatment. The date of that opinion was July 27, 1932.

On October 26, 1932, the employee filed a motion in the Industrial Commission alleging that neither the employer nor the insurance carrier had complied with the mandate in the above case; the prayer of this motion, however, was that the commission determine the amount of claimant's permanent disability. The Home Indemnity Company (defendant) was made a party to

the proceedings on that hearing. No request for medical treatment was set forth in the motion, and the record does not reveal whether medical treatment was rendered.

The insurance carrier had by this time become insolvent. The employer, Haynes Brothers Drilling Company, contested said motion to reopen. The commission, however, awarded the claimant compensation for partial permanent disability to the eyes. The employer then instituted action in this court for review of that order, and this court affirmed that award also. Haynes Bros. Drilling Co. v. Dungan, 164 Okla. 268, 23 P. (2d) 631. The award in that case, which was affirmed, was to the effect that the employer should pay claimant $18 per week for 100 weeks by reason of 20 per cent. permanent partial disability to the eyes. It was also expressly found in that order that the claimant had never been temporarily totally disabled from the performance of ordinary manual labor beyond the statutory five-day waiting period.

It is well to observe at this point that the first order, upon which the present defendant was surety on the appeal bond, was to the effect that there was no temporary total disability and that medical treatment should be furnished the claimant and he should be paid $18 compensation per week during the period of such treatment; while the latter award (in which the present defendant was not a surety on the appeal bond) found that there had never been any temporary total disability, but that a permanent partial disability had existed since the date of the accident, and required payment of $1,800 for such disability.

When the latter award was affirmed, the employer, Haynes Brothers Drilling Company, paid to the employee the $1,800 for permanent partial disability provided in that order, and then brought suit in the common pleas court of Oklahoma county against the Home Indemnity Company, surety on the appeal bond in the first proceeding, seeking reimbursement from that surety for the $1,800 which the drilling company had paid the employee under the latter award. The drilling company did not seek to recover from the Home Indemnity Company for medical treatment and **compensation** during the period of such treatment, as provided in the first order, but, as above stated, seeks recovery for the $1,800 paid the employee in compliance with the second award, decreeing permanent partial disability. The theory of recovery is based on the doctrine of subrogation, in that the insurance carrier was primarily liable to the employee, but that since said insurance carrier had become insolvent the drilling company (employer) had been compelled to pay the employee, and that therefore said employer became subrogated to the rights of the employee, not only as against the insurance carrier, but also against the surety on the insurance carrier's appeal bond in the first appeal proceeding.

Upon the foregoing state of facts the trial court rendered judgment for the employer plaintiff, against the surety on the first appeal bond, the Home Indemnity Company, and that company appeals. Several contentions are made, such as lack of jurisdiction of the common pleas court, lack of the right of subrogation, and asserted unconstitutionality of the Workmen's Compensation Law, but we do not pass on those points. The only proposition necessary to consider is the contention that the defendant surety was liable for performance of the first award only (in which it was surety on the appeal), and no other, and that therefore it is not liable either to the employer or to the employee for the $1,800 award made for permanent partial disability in the second proceeding.

The plaintiff in error was surety on the first appeal bond only. As such, its liability is measured by the terms of that bond and the provisions of the appeal statute (section 13363, O. S. 1931). The bond recited that whereas, on the 25th day of November, 1931, an award was rendered by the State Industrial Commission directing the respondent or insurance carrier to render the claimant "* * * such medical treatment as is needed at this time, and to pay compensation during the period of treatment at the rate of $18 per week," etc., and that if the insurance carrier should pay to the employee the amount of the order appealed from in case the judgment or final order should be adjudged against it, or affirmed in whole or in part, and pay the costs of the transcript of proceeding, the obligation would be void, otherwise it would remain in full force and effect.

Under the bond, and pursuant to the terms of the statute, the only undertaking assumed by the surety was, in substance, to see that the terms of the particular order appealed from were complied with, if affirmed in whole or in part. Concretely, its duty was to assure the rendition of such medical treatment as was needed at the

time, and the payment of $18 per week during the continuance of such treatment. There was no award for temporary total disability, and in fact it was later expressly found that temporary total disability never had existed. The record is devoid of any evidence as to whether the medical treatment (upon the continuance of which the $18 weekly payments depended) was ever furnished. In plaintiff's brief it is not alleged that such treatment was refused, though it is alleged that it was not tendered. In the defendant's brief it is said that the employee never appeared for or demanded the treatment; in another place it is stated that it became apparent that the treatment would be useless. The record is silent on this point. This leaves us wholly at sea on the question of whether the original award was ever satisfied.

However, the recovery of the plaintiff in the trial court was not based upon any claim for reimbursement under the original award, but was based upon the outgrowth of the second award. It is very obvious that the surety never undertook to insure payment of permanent disability compensation; it is equally evident that the surety did not undertake the payment of $18 weekly compensation for any particular period of time, but only for such period as the medical treatment should continue, under the first order. Thus, if no medical treatment was rendered (such as by the claimant's waiving, or refusing it, or such like, —and so far as we know, that may have been the fact), no obligation existed to pay the weekly $18. Since it does affirmatively appear in the record that the claimant was not rendered unable to work for the statutory period of five days, the supposition is that he continued such work and was drawing his regular salary; it is hardly likely that he would be drawing such salary and receiving the weekly $18 payments at the same time. In fact it is conceded by the parties that the sole purpose of the first appeal was to determine the question of liability rather than the amount of compensation. But that does not mean that the surety was to become liable for future different awards.

The plaintiff reasons that by becoming surety on the first appeal bond the defendant thereby rendered itself liable for payment of all future awards of whatever nature. Discussion of that question in this opinion would be mere repetition, since we held to the contrary of plaintiff's contention in Union Indemnity Co. v. Saling, 166 Okla. 133, 26 P. (2d) 217, and Home In-

demnity Co. of N. Y. v. Matkin, 174 Okla. 378, 50 P. (2d) 688, which decisions may be consulted for the reasons underlying the rule, and the application thereof. The syllabus of the latter decision is controlling here. It reads:

"The portion of section 13363, O. S. 1931, relative to the supersedeas bond required in order to obtain a review of an award of the State Industrial Commission under the Workmen's Compensation Act, does not contemplate that the surety thereon shall be deemed liable for any and all awards that may be rendered in the future in connection with the same case, but it does contemplate that the surety shall be liable on such awards as may be made in order to comply with the mandate of this court when, and if, the award sought to be reviewed is by this court affirmed in whole or in part, in the same proceeding for which the bond was filed."

It therefore follows that, regardless of the question of jurisdiction and the principles of subrogation, the judgment should be reversed. It is so ordered, and the cause remanded to the trial court, with directions to enter judgment for the defendant.

McNEILL, C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.